SEALED

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

IN THE MATTER OF THE SEARCH OF        )
INFORMATION ASSOCIATED WITH           )
jameshogan2006@yahoo.com THAT IS      )          CASE NO.
STORED AT PREMISES                    )
CONTROLLED BY YAHOO! INC.             )

**AFFIDAVIT OF JARED CAMPBELL IN SUPPORT OF
APPLICATION FOR SEARCH WARRANT**

I, Jared Campbell, being first duly sworn, hereby depose and state as follows:

**A.     Introduction and Agent Background**

1.      I make this affidavit in support of an application for a search warrant for information associated with YAHOO! account jameshogan2006@yahoo.com that is stored at premises owned, maintained, controlled, or operated by the free web-based electronic mail service provider known as YAHOO! Inc. ("YAHOO!"), headquartered at 701 First Avenue, Sunnyvale, California.  The information to be searched is described in the following paragraphs and in Attachments A and B.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require YAHOO! to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communications.

2.      I am a Special Agent of the Diplomatic Security Service (DSS), U.S. Department of State and have been so employed since July 2003.  Prior to employment with DSS, I completed six years as an active duty United States Air Force commissioned officer in the Security Forces career specialty.  I hold a Bachelor of Science degree in Education (Biology) from The Citadel, The Military College of South Carolina, and a Masters of International Relations degree from Troy State University.  Currently, I conduct criminal investigations concerning acts of violent

crime committed by, and against, individuals who fall under the jurisdiction of United States Ambassadors at United States Embassies, Consulates, and Missions abroad. I have received specialized training in the investigation of violent crime at the Federal Law Enforcement Training Center and the Diplomatic Security Training Center. I have previously served in the execution of search warrants relating to violent crimes.

3. As set forth in this affidavit, there is probable cause to believe that the email account(s) of James E. Hogan (discussed below) contain important evidence into his possible murder, in violation of Title 18, United States Code, Section 1111(b) (Murder within the special maritime and territorial jurisdiction of the United States); Title 18, United States Code, Section 1114 (Killing an officer or employee of the United States while engaged in, or on account of, his official duties); Title 18, United States Code, Section 1117 (Conspiracy to Commit Murder); and/or Title 18, United States Code, Section 1119 (Foreign murder of United States nationals).

4. The facts in this affidavit come from my personal knowledge of the investigation, my training and experience, information obtained from other agents and witnesses, public record sources, and other sources as indicated herein. This affidavit does not set forth all information known to the government about this case and is being submitted solely for the purpose of providing sufficient information to show that there is probable cause for the requested warrant.

**B.     Probable Cause**

5. Based on the facts set forth in this affidavit, there is probable cause to believe that there is evidence in the email accounts of U.S. Foreign Service Officer James E. Hogan to indicate if he was the victim of murder, suicide, or another event.

6. According to fellow agents in Curacao, who have spoken with Hogan's wife, Abby Hogan, during the late evening hours of September 24, 2009, James E. Hogan, a U.S. Department of State employee assigned as the Vice Consular Officer to the U.S. Consulate in

Curacao, Netherland Antilles, left his residence to go for a walk. On September 25, 2009 at approximately 00:10hrs, Hogan called his wife, Abby Hogan, from his cell phone, waking her, and asked her to leave the front door unlocked. Hogan told Abby Hogan that he would be return home shortly. The conversation lasted just under three minutes. During the conversation, Abby Hogan recalled hearing James Hogan say, apparently to someone physically near him, "Excuse me - this is a personal call." Abby Hogan did not know with whom James Hogan was speaking, but believes it was a stranger given her husband's tone of voice. Abby Hogan returned to sleep after the phone call.

7.  Upon waking on the morning of September 25, 2009, Abby Hogan discovered that her husband had not returned home. Abby Hogan filed a missing person report for James Hogan with the local Curacao police (Dutch Law Enforcement) and alerted the U.S. Consulate of his disappearance. Dutch law enforcement subsequently initiated an investigation with the assistance of Drug Enforcement Agency (DEA) agents assigned to U.S. Consulate Curacao, DSS agents, and Federal Bureau of Investigation (FBI) agents.

8.  According to agents in Curacao, on September 25, 2009, a local diver recovered a folded pair of jeans, a pair of socks, and a pair of tennis shoes from a beach area in Curacao known as Blue Rock, and turned the items over to Dutch law enforcement. The recovered clothing matched the description of the clothing James Hogan was wearing when he left his residence on September 24th, 2009. Bloodstains were on the jeans. Upon visiting the Blue Rock beach area, Dutch law enforcement also discovered blood on the beach and on rocks near the beach shore. Forensic DNA testing of the blood found on the jeans and at the Blue Rock beach area yielded a DNA profile match to James Hogan.

9.  Dutch law enforcement examined James Hogan's cell phone records. Hogan's last recorded phone call was triangulated to a tourist area of Curacao known as the Lion's Den, an

area located approximately a 20-minute-drive from Hogan's residence. Abby Hogan and other family members stated that James Hogan was not known to frequent the Lion's Den in the past.

10.     On or about October 2, 2009, Dutch law enforcement interviewed a witness (No further information, NFI) who stated that at approximately 02:30 hours on September 25th, 2009, she saw a man, wearing clothing similar to that worn by James Hogan and matching his physical description, walking along the beach in the direction of Blue Rock.

11.     Also on October 2, 2009, Dutch dive teams discovered Hogan's cell phone underwater, approximately 4-5 meters off of the Blue Rock beach where James Hogan's clothes and blood were found. Dutch divers also discovered a knife with an approximately 5-inch-long blade underwater, approximately 20-25 meters off the Blue Rock where James Hogan's clothes and blood were found.

12.     On October 5, 2009, DSS agents and Dutch police, utilizing advanced chemical processing techniques, discovered a left handprint on a rock located nearby the site where James Hogan's clothes and blood were discovered on September 25th, 2009.

13.     As of October 7, 2009, James Hogan has not been found. DSS record checks do not reveal any travel by James Hogan on either U.S. tourist issued or U.S. diplomatic passport booklets. As family members have provided law enforcement with the email address that they used to communicate with James Hogan, agents believe that Hogan's recent email communications will rule out depression or suicide as an explanation for his disappearance, and also reveal whether Hogan was in dispute with any other individual, the victim of a extortion, or the victim of a premeditated attack, among other things.

14.     The evidence collected in the case to date strongly suggests that James Hogan is now dead.

15.     According to family members and friends at the U.S. Consulate in Curacao, James Hogan used e-mail address jameshogan2006@yahoo.com.  On or about September 28, 2009, YAHOO! was sent a preservation request regarding the e-mail address jameshogan2006@yahoo.com.

16.     Abby Hogan, James Hogan's wife has consented to the search of James Hogan's jameshogan2006@yahoo.com e-mail account.  According to YAHOO! terms of service, however, YAHOO! e-mail accounts do not transfer to the executor of the deceased's estate or to next of kin.  For a consent search, YAHOO! will accept the consent only of the missing Hogan.

**C.     Technical Background Regarding Computers, the Internet, and E-mail**

17.     Based on my training, experience, and knowledge, I know the following:

   a.    The Internet is a worldwide network of computer systems operated by governmental entities, corporations, and universities.  In order to access the Internet, an individual computer user must subscribe to an access provider, which operates a host computer system with direct access to the Internet.  The World Wide Web is a functionality of the Internet which allows users of the Internet to share information;

   b.    With a computer connected to the Internet, an individual computer user can make electronic contact with millions of computers around the world.  This connection can be made by any number of means, including modem, local area network, wireless, and numerous other methods; and

   c.    E-mail is a popular form of transmitting messages and/or files in an electronic environment between computer users.  When an individual computer user sends e-mail, it is initiated at the user's computer, transmitted to the mail server of the subscriber's access provider, then transmitted to its final destination.  A server is a computer that is attached to a dedicated network and serves many users.  An e-mail server may allow users to post and read messages and to communicate via electronic means.

18. Based on my knowledge and experience, individuals use e-mail accounts to write, send, and receive, among other things, personal correspondence to family members and friends regarding their whereabouts, daily plan, people they meet, and significant events—both positive and negative, and to conduct business with business associates. Individuals may also receive e-mail messages regarding financial transactions such as withdrawals and payments. Based on my knowledge and experience investigating missing person cases, missing persons may write or receive e-mail messages which reveal, among other things, their last known activities and whereabouts and also reveal information regarding possible suspects and witnesses, information that contradicts statements by possible suspects and witnesses, and motives for crimes committed against them. Based also on my knowledge and experience, criminals may attempt to access the e-mail accounts of their victims in order to destroy or manipulate evidence.

**D.     YAHOO! E-mail**

19. In my training and experience, I have learned that YAHOO! provides a variety of on-line services, including electronic mail ("e-mail") access, to the general public. Subscribers obtain an account by registering with YAHOO!. During the registration process, YAHOO! asks subscribers to provide basic personal information. Therefore, the computers of YAHOO! are likely to contain stored electronic communications (including retrieved and unretrieved e-mail for YAHOO! subscribers) and information concerning subscribers and their use of YAHOO! services, such as account access information, e-mail transaction information, and account application information.

20. In general, an e-mail that is sent to a YAHOO! subscriber is stored in the subscriber's "mail box" on YAHOO! servers until the subscriber deletes the e-mail. If the subscriber does not delete the message, and the subscriber accesses the account periodically, the message can remain on YAHOO! servers indefinitely.

21.     When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to YAHOO!'s servers, and then transmitted to its end destination.  YAHOO! often saves a copy of the e-mail sent.  Unless the sender of the e-mail specifically deletes the e-mail from the YAHOO! server, the e-mail can remain on the system indefinitely.

22.     A YAHOO! subscriber can also store files, including e-mails, address books, contact or buddy lists, pictures, and other files, on servers maintained and/or owned by YAHOO!

23.     Subscribers to YAHOO! might not store on their home computers copies of the e-mails stored in their YAHOO! accounts.  This is particularly true when they access their YAHOO! accounts through the web, or if they do not wish to maintain particular e-mails or files in their residence.

24.     In general, e-mail providers like YAHOO! ask each of their subscribers to provide certain personal identifying information when registering for an e-mail account.  This information can include the subscriber's full name, gender, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number).

25.     E-mail providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via YAHOO!'s website), and other files that reflect usage of the account.  In addition, e-mail providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account.  Because every

device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

26. Subscribers to YAHOO! generally may access their accounts on servers maintained and/or owned by YAHOO! from any computer connected to the Internet located anywhere in the world.

**E.     Information to be Searched and Items to be Seized**

27. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require YAHOO! to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section II of Attachment B. Upon receipt of the information described in Section II of Attachment B, government-authorized persons will review that information to locate the items described in Section III of Attachment B.

**F.     Conclusion**

28. Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that on the computer systems in the control of YAHOO!, headquartered at 701 First Avenue, Sunnyvale, California, there exists evidence of a violation of Title 18, United States Code, Section 1111(b) (Murder within the special maritime and territorial jurisdiction of the United States); Title 18, United States Code, Section 1114 (Killing an officer or employee of the United States while engaged in, or on account of, his official duties); Title 18, United States Code, Section 1117 (Conspiracy to Commit Murder); and/or Title 18, United States Code, Section 1119 (Foreign murder of United States nationals).  Accordingly, a search warrant is requested.

29. This Court has jurisdiction to issue the requested warrant because the grand jury is investigating offenses over which the court has jurisdiction pursuant to Title 18, United States

Code, Section 1111(b) (Murder within the special maritime and territorial jurisdiction of the United States); Title 18, United States Code, Section 1114 (Killing an officer or employee of the United States while engaged in, or on account of, his official duties); Title 18, United States Code, Section 1117 (Conspiracy to Commit Murder); and Title 18, United States Code, Section 1119 (Foreign murder of United States nationals).  See 18 U.S.C. § 2703(a).

30. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

*--REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK--*

**G.    Request for Sealing**

31.    It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant.  I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into criminal activity and no targets of this investigation will be searched at this time.  Based on my training and experience, I have learned that criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other criminals as they deem appropriate.  Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

_____
Jared Campbell
Special Agent
Diplomatic Security Service
U.S. Department of State

Sworn to and subscribed before me
on this \_\_\_\_\_ day of October 2009

_____
Hon. Deborah A. Robinson
United States Magistrate Judge
District of Columbia